■ M. W. ZACK METAL COMPANY, Respondent, v INTERNATIONAL NAVIGATION CORPORATION OF MONROVIA, Defendant; NEWCASTLE PROTECTION & INDEMNITY ASSOCIATION et al., Appellants, and FEDERAL INSURANCE COMPANY, Respondent, et al., Defendants.—Order, Supreme Court, New York County (Alvin F. Klein, J.), entered May 4, 1984, *inter alia* denying the motion by defendant the London Steamship Owner's Mutual Insurance Association Limited (London), Newcastle Protection & Indemnity Association (Newcastle) and La Morte Burns & Co., Inc. (La Morte) and the cross motion by defendant Federal Insurance Company (Federal), for dismissal for failure to state a cause of action, unanimously reversed on the law, and the complaint is dismissed against these defendants, with costs to London, Newcastle and La Morte only.

This 25-year-old matter began in 1960 when plaintiff purchased a quantity of Austrian coiled steel for sale to a midwest company. The steel was to be shipped under a clean bill of lading from Antwerp to New York aboard the *S. S. Severn River,* a vessel owned by defendant International Navigation Corporation of Monrovia (the owner), a Liberian corporation, under charter to defendant Contam Linie (the charterer), a German partnership also known as Jansen & Co. Damaged in transit, the goods were refused by the buyer, forcing plaintiff to sell the shipment at salvage, at a loss of approximately $79,723.74.

Over the last 25 years no less than five damage actions have been commenced by plaintiff in different Federal courts

against the vessel owner and its charterer, several of which were dismissed for failure to prosecute. A similar action was commenced in 1961 in a German court in Hamburg. While that action was pending, plaintiff sued Federal, its own cargo underwriter, here in New York. After protracted trial and appellate litigation, this New York case was settled in 1968, Federal paying plaintiff $40,000 plus interest on the cargo damage claim, in exchange for 55% of any net recovery plaintiff might realize in the pending German litigation, in which plaintiff's attorney would continue to represent the interests of both of these parties. Plaintiff's attorney agreed to keep the cargo insurer informed of the status of that German litigation in semiannual reports. (According to Federal, plaintiff denounced this settlement two months later.)

Two years after this New York settlement, Federal assigned its interest in the outcome of the German litigation to defendants Newcastle and London, British indemnity insurers for the charterer and the vessel owner, respectively.* Plaintiff then sued these indemnity insurers for $200,000 in damages, in one of its Federal actions, alleging fraud in so purchasing Federal's interest.

In 1971, after 10 years of litigation, plaintiff obtained a $64,000 judgment in the German action against the charterer and the owner. The latter's liability, however, was limited to execution upon the vessel, which unbeknownst to the court had foundered at sea three years earlier. Plaintiff thus turned to Newcastle, the charterer's indemnity insurer, which guaranteed satisfaction upon final resolution of all appeals and settlements in the German action. Four years later, the German appeals court dismissed plaintiff's claim against the ship owner and reduced the liability of the charterer to $33,000 plus interest and costs. Newcastle posted a bond for this amount, and also a lien to secure the indemnity insurers' 55% interest in plaintiff's recovery which they had purchased from Federal.

In 1978 plaintiff commenced its fifth Federal action by suing the owner, the charterer and their indemnity insurers in the Southern District of New York on several causes of action. Dismissal of this action was affirmed by the Second Circuit in 1982 (675 F2d 525). In affirming also the dismissal of the

---

* The second amended complaint alleges that Newcastle insured the owner while London insured the charterer, but all other references in the record seem to indicate otherwise. For the sake of consistency only, we adopt the implications of the record.

defendants' counterclaims for abuse of process and malicious prosecution, the Court of Appeals gave plaintiff the benefit of the doubt, that its counsel, for all these many years, was not acting in bad faith.

In 1983, after reviving its more-than-a-decade old New York action, plaintiff noticed a pretrial examination of the charterer's insurer. The British indemnity insurers of the charterer and the owner, as well as defendant La Morte (their claims representative here in New York), then moved for dismissal of the action for failure to state a cause of action, as well as vacatur of the notice to examine the charterer's insurer. Federal cross-moved for dismissal on the basis of its settlement with plaintiff. The British indemnity insurers and their New York claims representative, joined by Federal, appeal the denial of their motions.

Basically, plaintiff alleges that Federal's assignment of its interest in the outcome of the German litigation to the British indemnity insurers of the vessel and its charterer somehow defrauded plaintiff, and that all the defendants conspired to defraud plaintiff of its recovery in the German litigation. How this fraud was to operate is unclear, especially in light of the fact that plaintiff has never moved to execute on its German judgment, awarded in 1971 and reduced and secured by bond in 1975. A careful reading of the settlement, stipulated orally on the record before Justice Flynn on March 14, 1968, yields no basis for inferring any restriction on Federal's right with regard to the interest it acquired.

Unless forbidden by law or clearly limited by agreement or waiver (*Allhusen v Caristo Constr. Corp.*, 303 NY 446), any claim for recovery of damages for other than personal injury may be transferred or assigned (General Obligations Law § 13-101). The implication of the complaint is that defendants somehow connived to deprive plaintiff of recovery in the German litigation. Of course, this was disproved by subsequent events, viz., the judgment which plaintiff later obtained in that action. Since plaintiff's attorney, by the terms of the agreement, was still controlling that litigation, it is difficult to see how plaintiff's prosecution of that case was in any way frustrated by Federal's assignment. Plaintiff had a 45% interest in the outcome of that action, and the assignment in no way changed that. The only interest of Federal, which had already waived control of the German litigation, was in a percentage of the eventual recovery. Plaintiff objects that Federal's assignment violates the 1968 agreement because it purports to assign a right to sue. But while choses in actions

are freely assignable, there is no indication that the indemnity insurers, as assignees, took this assignment with any such expectation. Under the terms of the agreement, the assignment consisted simply of a 55% interest in "the *proceeds* if any, to be received from the prosecution of this suit" (emphasis added). There is no indication in this record that the assignees considered the assignment to have consisted of anything but this percentage interest in the ultimate recovery.

In denying the dismissal motions, Special Term, without elucidation, found causes of actions stated for "breach of a settlement agreement" and "wrongful payment * * * of certain monies". In the context of the 1968 agreement, the second amended complaint spells out neither a breach nor a wrongful payment of money actionable at law. Concur—Sullivan, J. P., Asch, Bloom, Fein and Milonas, JJ.